UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CHRISTINE ARAKELIAN, *Plaintiff*, v. CITY OF FALLS CHURCH, *et al.*, *Defendants*. | 1:25-cv-00443-MSN-LRV |

# **MEMORANDUM OPINION AND ORDER**

Virginia has established in law a system of Boards of Equalization ("BOEs" or, singularly, "BOE") to adjudicate property-owners objections to local tax assessments. Plaintiff Christine Arakelian asserts that the procedural rules BOEs employ are not fair. Not just that, but she claims (in her third suit along these lines) that BOEs' procedures violate the Fourteenth Amendment of the United States Constitution because they do not provide due process to homeowners like her who wish to challenge their property assessment. She has sued both the City of Falls Church ("City"), where she owns a condo, the Chief Justice of the Virginia Supreme Court, and Judges of the Arlington Circuit Court (together, "Judge Defendants"), alleging violations of her constitutional rights under 42 U.S.C. § 1983 and conspiracy under 42 U.S.C. § 1985.

Both the City and the Judge Defendants have separately moved to dismiss Arakelian's Complaint. The Court will grant those motions. The Judge Defendants are immune from damages under the Eleventh Amendment, and the claims against the City are largely barred by *res judicata*. And to the extent Arakelian's claims are not barred by sovereign immunity and *res judicata*, they fail to state a claim under Rule 12(b)(6).

Arakelian has also filed a motion for Rule 11 sanctions against the City, and a motion for leave to file an amended Complaint. Because she has not shown that sanctions are warranted or that her amended complaint could survive a motion to dismiss, both motions will be denied.

I.  BACKGROUND

   A.  Factual Background

Christine Arakelian resides in a condominium she owns in Falls Church, Virginia. ECF 1 ("Compl.") ¶ 33. Defendant Honorable S. Bernard Goodwyn is the Chief Justice of the Virginia Supreme Court. *Id.* ¶ 34. The remaining Judge Defendants (Judith Wheat, Daniel Fiore, Louise DiMatteo, and Daniel Lopez) serve on the Arlington County Circuit Court. *Id.* ¶ 35.

BOEs in Virginia are creatures of state statute. Their members are appointed by the judges of the circuit court encompassing the jurisdiction over which the BOE has authority. Va. Code. § 58.1-3373(A). In jurisdictions where annual or biennial property assessments are conducted, BOEs consist of a board of three to five members. *Id.* BOEs may sit to hear "complaints that real property is assessed at more than fair market value." *Id.* § 58.1-3378. Virginia law requires that "[i]n all cases brought before the board, there shall be a presumption that the valuation determined by the assessor is correct." *Id.* § 58.1-3379(B). A complaining taxpayer thus bears the burden of showing that the property is overvalued. *Id.* After a hearing, the BOE then issues an order increasing, decreasing, or affirming a tax assessment. *Id.* § 58.1-3381. Any party aggrieved by an order of the BOE may appeal to the appropriate Virginia circuit court. *Id.* § 58.13382.

On June 1, 2023, Arakelian filed an appeal challenging the assessed value of her Falls Church condominium. Compl. ¶ 36. The gravamen of her complaint was that the BOE did not "establish objective, rational criteria by which neighborhoods can be determined." *Id.* ¶ 37. The neighborhood in which a property lies, Arakelian alleges, is "virtually outcome determinative in a BOE hearing because the City of Falls Church asserts that it is not legally obligated to consider

2

comparable valuations that are outside of a given neighborhood." *Id.* Arakelian further alleges that "the City of Falls Church assessor stated during a public, videotaped BOE hearing that the Virginia Code prohibits both the City of Falls Church BOE and any homeowner from questioning or challenging the definition of a neighborhood during any BOE hearing." *Id.* ¶ 38. Arakelian asserted several additional grounds including that the neighborhood definitions were without "any rational basis," that the City was "not allowed to grandfather in Jim Crow era maps of particular neighborhoods," and that the presumption of correctness of the assessor's valuation was unconstitutional. *Id.* ¶¶ 39-41.

On December 11, 2023, the City's BOE liaison emailed Arakelian a hearing packet setting her hearing for January 9, 2024, and including a copy of the 2023 BOE Rules of Procedure. Compl. ¶ 43. Rather than attend her hearing, Arakelian withdrew her appeal on the ground that she "is not legally obliged to subject herself to any adjudicative body in the Commonwealth of Virginia with facially unconstitutional Rules of Procedure." *Id.* ¶ 44.

### B.    Procedural Background

This is not the first time that Arakelian has sued the City regarding its tax assessment and BOE practices. Her first such suit, filed in Arlington Circuit Court in December 2022, named the City and Arlington County as defendants. ECF 12-1 at 8-9. She claimed that the proceedings employed by the BOE during an earlier 2022 challenge to her condo's assessed value violated the Virginia Constitution and United State Constitution on various grounds, including that the BOE's procedures violated due process. *Id.* at 24-35. Arakelian calculated that the valuation increase of roughly $40,000 caused her damages of $232.47 in increased property taxes. *Id.* at 37. On a demurrer by the city, the Circuit Court held that "the factual allegations are fatally deficient," sustaining the demurrer and refusing to allow Arakelian an opportunity to amend her complaint. *See Arakelian v. City of Falls Church*, No. 24-313, Pet. App. 15a-16a (U.S. Sept. 13, 2024).

Arakelian appealed that ruling all the way to the United States Supreme Court, which denied her petition for a writ of certiorari. *See Arakelian v. City of Falls Church*, 145 S. Ct. 567 (Nov. 18, 2024).

Arakelian next sued two local officials in Arlington County Circuit Court in June 2023. Her second suit named Ashley Pollard and Christopher Falcon. ECF 12-2. Pollard is a real estate records specialist and liaison to the Falls Church BOE. *Id.* at 16. Falcon is an employee of the Arlington County Circuit Court. *Id.* at 16-17. Arakelian's second suit raised similar complaints about her property valuation and BOE appeal, claiming due process violations under the Virginia and United States Constitutions. *Id.* at 57-61. The Arlington County Circuit Court again sustained Defendants' demurrers and dismissed the case with prejudice and without leave to amend. *Arakelian v. Pollard*, No. 24-606, Pet. App. 4a-5a (U.S. Nov. 26, 2024). Arakelian appealed that judgment and also failed to obtain a writ of certiorari from the United States Supreme Court. *Arakelian v. Pollard*, 145 S. Ct. 1171 (Feb. 24, 2025).

On March 11, 2025, just weeks after the denial of certiorari in Arakelian's second state court case, she filed this action. Her complaint contains seven counts. Count I is a facial challenge to the 2023 BOE Rules of Procedure that applied to her canceled hearing. Compl. ¶¶ 70-77. Count II asserts that the Virginia BOE Act, which establishes and regulates BOEs, is facially unconstitutional. *Id.* ¶¶ 78-89. Count III argues that the Tax Injunction Act, as applied to this proceeding, is unconstitutional. *Id.* ¶¶ 90-97. Count IV seeks to hold the City liable under *Monell* for violating Plaintiff's 14th Amendment rights. *Id.* ¶¶ 98-108. Count V alleges that Chief Justice Goodwyn of the Virginia Supreme Court violated Plaintiff's 14th Amendment rights by failing to ensure that Plaintiff had access to constitutional BOE procedures in his role as the chief administrative officer for the Virginia Court system, and failing to ensure uniformity of practice

4

in the judicial system of Virginia. *Id.* ¶¶ 109-127. Count VI seeks to hold the Arlington County Circuit Judges liable for violations of Plaintiff's 14th Amendment rights because they "failed to supervise, manage or control" BOE members. *Id.* ¶¶ 128-139. Count VII alleges an unlawful conspiracy to deprive Plaintiff of her rights under 42 U.S.C. § 1985. Plaintiff is seeking declaratory and injunctive relief, actual damages, punitive damages, and other necessary and appropriate relief. *Id.* ¶¶ 145-169.

Both the City and the Judge Defendants filed motions to dismiss. ECF 7; ECF 9 ("Judge MTD"); ECF 10; ECF 12 ("City MTD"). Arakelian opposed those motions, ECF 16 ("Opp."), and the Judge Defendants filed a reply brief, ECF 18. After briefing on the motions to dismiss was complete, Arakelian moved for leave to file amended complaint. ECF 19; ECF 20. The Judge Defendants and City both opposed that motion. ECF 25; ECF 26. Arakelian also filed a motion for Rule 11 sanctions against the City, which it opposed. ECF 22; ECF 28.

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(1)

On a motion to dismiss that challenges this Court's subject matter jurisdiction, it is the plaintiff's burden to show that jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1336, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). A defendant may move to dismiss under Rule 12(b)(1) either through a facial challenge, contending "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," or a factual challenge, arguing "that the jurisdictional allegations of the complaint are not true." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). While motions to dismiss based on immunity do not invoke "a 'true limit' on this Court's subject matter jurisdiction," district courts in this circuit have

5

concluded that "it is . . . appropriate to consider [such] argument[s] under Fed. R. Civ. P. 12(b)(1) because it ultimately challenges [a] Court's ability to exercise its Article III power." *Beckham v. National R.R. Passenger Corp.*, 569 F. Supp. 2d 542, 547 (D. Md. 2008); *see also Zemedagegehu v. Arthur*, 2015 WL 1930539, at *3 (E.D. Va. Apr. 28, 2015). Courts construe immunity-based 12(b)(1) motions as facial challenges, and thus consider whether the "complaint fails to allege facts sufficient to establish subject matter jurisdiction." *Zemedagegehu,* 2015 WL 1930539, at *3.

### B. Federal Rule of Civil Procedure 12(b)(6)

This Court must grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if a complaint fails as a matter of law "to state a claim upon which relief can be granted." To survive such a motion, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its fact." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). A plaintiff need not include "detailed factual allegations," but must include in her complaint more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555. When considering a motion under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences in favor of the plaintiff.' *E.l. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citation omitted).

A *pro se* complaint should be liberally construed. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). But the Court's "task is not to discern the unexpressed intent of the plaintiff." *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). Nor does the liberal pleading standard "excuse a clear failure in the pleadings to allege a federally cognizable claim." *Laber v. United States DOD*, No. 3:21-cv-502, 2021 WL 5893293, at *2 (E.D. Va. Dec. 13, 2021) (citing *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390-91 (4th Cir. 1990)).

6

### III. ANALYSIS

#### A. Judge Defendants

The Judge Defendants raise two immunity defenses, claim that *Rooker-Feldman* bars any case against them, and allege that Arakelian has failed to state a claim. Although judicial immunity does not apply here, sovereign immunity precludes Arakelian from seeking damages against the Judge Defendants. And while *Rooker-Feldman* does not pose a bar to Arakelian's suit, she has failed to state a claim on which injunctive or declaratory relief could be granted.

##### 1. Judicial Immunity

The Judge Defendants assert that they are entitled to immunity from suit for both damages and injunctive relief under the doctrine of judicial immunity. Judge MTD at 6-8.

"As a class, judges have long enjoyed a comparatively sweeping form of immunity, though one not perfectly well-defined." *Forrester v. White*, 484 U.S. 219, 225, (1988). The doctrine, however, applies only to "truly judicial acts" and not to "acts that simply happen to be done by judges." *Id.* at 227. That is, "administrative, legislative, and executive functions that judges may on occasion be assigned by law to perform" do not fall within this ambit of judicial immunity. *Id.* This comports with the historical pedigree of the immunity, which arose "as a device for discouraging collateral attacks and thereby helping to establish appellate procedures as the standard system for correcting judicial error." *Id.* at 225.

Plaintiff's attack here identifies purported "administrative, legislative, and executive functions," to which judicial immunity does not attach. Her complaint with Chief Justice Goodwyn relates to his management of the Virginia Court system in an administrative capacity. She alleges that it is his responsibility to promulgate "the efficient and effective operation" of the Commonwealth's judicial system and to ensure uniform adjudicative practices. Compl. ¶¶ 110, 120. As alleged, these functions are not ones "normally performed by a judge," nor do they involve

7

parties who "deal[] with the judge in his judicial capacity," and judicial immunity does not attach. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *see also White v. Hesse*, 2024 WL 5202511, at *5 (W.D. Okla. 2024) ("These acts do not take place during any type of court proceedings, and no parties are involved. Such tasks are not performed by a judge as part of his normal duties.").

The same goes for the Fairfax County Circuit Court judges, who Arakelian is suing pursuant to their duties to appoint BOE members. Compl. ¶ 131. A statutory duty of appointment and/or management is likewise untethered from the ordinary judicial role and court proceedings, and does not constitute "an act taken in the judge's judicial capacity." *Watts v. Bibb County, Ga.*, 2010 WL 3937397, at *13 (M.D. Ga. Sept. 30, 2010) (finding that appointments of associate magistrates under Georgia law was not a judicial function).

### 2. Sovereign Immunity

The Judges next argue that they are entitled to sovereign immunity because, while Arakelian purports to sue them in their individual capacity, she is in fact suing them for actions taken in their official capacities, and is therefore in fact seeking damages against the state. Judge MTD at 8-10.

The Eleventh Amendment establishes a wide-reaching sovereign immunity beyond the scope of its text, restricting "federal jurisdiction over suits against unconsenting States." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (U.S. 1996). This principle extends also to "State officers acting in their official capacity . . . because 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.'" *Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)). In determining "whether [a] suit is a suit against the State itself," as opposed to the named individuals, courts must "look beyond the form of the complaint . . . to determine who is the 'real, substantial party in interest.'" *Martin v. Wood*, 772 F.3d 192, 195, 196

8

(4th Cir. 2014) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)). In doing so, courts in the Fourth Circuit look to: (1) whether "the allegedly unlawful actions of the state officials tied inextricably to their official duties;" (2) "if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State;" (3) "would a judgment against the state officials be 'institutional and official in character;'" (4) "were the actions of the state officials taken to further personal interests;" (5) "were the state officials' actions *ultra vires*." *Id.* at 196 (citations omitted).

While Arakelian has purported to sue the Judge Defendants in their individual capacities, Compl. ¶¶ 34, 35, that formal designation falls away under closer scrutiny. As to Chief Justice Goodwyn, her complaint sues him in relation to his duty to oversee Virginia's judicial system. *Id.* ¶ 34. And the Arlington County Circuit Judges are sued because they "appointed one or more members of the City of Falls Church BOE." *Id.* ¶ 35. These "allegedly unlawful actions" are among Defendants' official duties. *Martin*, 772 F.3d at 196; *see* Va. Code. § 58.1-3373(A); Va. Const., Art. VI, sec. 4. Any relief would be "official in character," and there is no allegation that the actions furthered any Defendant's personal interests. And, because Plaintiff has not alleged any constitutional violation by the Judge Defendants, *see infra* § III.A.4, Arakelian has not alleged any *ultra vires* actions. For these reasons, Eleventh Amendment sovereign immunity bars any damages claim against the Judge Defendants.[1]

### 3. Rooker-Feldman

The Judge Defendants argue that the *Rooker-Feldman* doctrine precludes consideration of this case because it amounts to a collateral attack on prior state court judgements against Arakelian.

---

[1] The Judge Defendants do not address the issue as to whether they are properly subject to suit for injunctive and declaratory relief under *Ex Parte Young*, so the Court will consider whether Arakelian has stated such a claim below. 209 U.S. 123 (1908).

9

Judges MTD at 10-11. The *Rooker-Feldman* doctrine is a narrow bar to "cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgements." *Thana v. Board of License Comm'rs for Charles County, Md.*, 827 F.3d 314, 320 (4th Cir. 2016) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)) (emphasis removed). The doctrine thus differs from ordinary principles of preclusion, which "are designed to address the tension between two concurrent, independent suits when the two suits address the same subject matter, claims, and legal principles." *Id.* "The *Rooker-Feldman* doctrine, by contrast, assesses only whether the process for appealing a state court judgment to the Supreme Court . . . has been sidetracked by an action filed in a district court *specifically* to review that state court judgment." *Id.*

*Rooker-Feldman* does not apply here. While it is true that the Plaintiff is unsatisfied with prior state court judgments, her suit against the Judge Defendants does not directly attack the validity of those judgments. Rather, it targets their administrative roles in managing the judicial system and their alleged supervision of BOEs. As such, it falls outside of the narrow confines of the *Rooker-Feldman* doctrine.

### 4. Failure to State a Claim

Insofar as any claim for declaratory and/or injunctive relief against the Judge Defendants remains, the Judge Defendants argue that it fails because Arakelian has failed to allege a violation of due process, a failure to plead conspiracy, and a failure to show any connection between the Judge Defendants and oversight of Virginia's BOEs. Judges MTD 6 at 12-14. Because the second two arguments are sufficient to grant Defendants' motion, the Court will not reach the first.

Count VII of Arakelian's Complaint alleges a 42 U.S.C. § 1985 conspiracy among all the Defendants "to deprive the Plaintiff and thousands of other citizens" of their Fourteenth

Amendment Rights. Compl. ¶¶ 140-144. The Judge Defendants argue in their motion that Arakelian has not alleged an "agreement" or "meeting of the minds" sufficient to state a conspiracy claim. Judges MTD 13. In her opposition, Arakelian does not respond to this argument, instead noting that she "will amend her complaint and remove her § 1985 claim." Opp. at 20. This concession and failure to respond to the argument waives any opposition, and dismissal of Count VII is therefore appropriate. *See L.M. v. Graham*, 2024 WL 1742233, at *7 n.5 (E.D. Va. Apr. 23, 2024).

The Judge Defendants also argue that even if the Falls Church BOE's rules are unconstitutional, Arakelian has not stated a claim against them because they do not have any direct authority over the BOE. Judges MTD at 13-14. Arakelian's claim against Chief Justice Goodwyn is premised on his role as the administrative head of the Virginia court system, and a statement on the Virginia courts website that "[u]niformity of practice is regarded as a vital element for the development of a sound judicial system." *Id.* (citing Compl. ¶ 69; Va. Const. Art. VI, sec. 5). Defendants claim that the BOE's activities derive from the municipal authority to conduct tax assessments, and that they are not by law a part of Virginia's judicial system. Arakelian's response, which simply notes that the Courts have the authority to hear appeals from BOE decisions and insists that "courts not of record" as defined in the Virginia Code includes BOEs. Opp. at 17-18. This is incorrect, as the Title of the Virginia Code dealing with "courts not of record" does not include any provision for BOEs, which are established under a separate title of the Virginia Code. *See generally* Va. Code Title 16.1; Title 58.1. Accordingly, Arakelian has not pled facts entitling her to any relief against Chief Justice Goodwyn.

Similarly, Arakelian fails to allege any facts in support of her legal conclusion that Arlington Circuit Court Judges "supervise, manage, or control" the members of the Falls Church

11

BOE. *See* Judges MTD at 14 (quoting Compl. ¶ 135). Indeed, the only administrative relationship between the Circuit Court and the BOE (apart from hearing appeals from the BOE) is the appointment of members. Va. Code. § 58.1-3370. In response, Arakelian asserts that "Arlington Circuit Court Judges have a duty not to delegate judicial making [sic.] authority to BOE appointees who subsequently impinge on citizens' 14th Amendment rights," and that this "duty may necessitate . . . exercising oversight over the rules of procedure adopted by such BOE appointees." Opp. 19. But such a bald assertion of an incorrect legal conclusion—there is no "delegation" because no law vests the BOE's authority in the Circuit Court to begin with—cannot save Arakelian's Complaint. She therefore fails to state any claim against the Circuit Court Judges as well.

### B. City of Falls Church

This is not the first time Arakelian has sued the City, which now raises *res judicata* and collateral estoppel as defenses and argues that Arakelian has failed to state a claim. The Court finds that *res judicata* bars nearly all of Arakelian's case against the City because a demurrer was sustained in her prior suit, and that what remains of this case fails to state a claim.

#### 1. Res Judicata

The City's first argument is that *res judicata* bars Arakelian's claims against it, as they have already been litigated and decided in her prior state cases. Under the doctrine of *res judicata*, also known as claim preclusion, a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moltie*, 452 U.S. 394, 398 (1981). "By precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, 'res judicata . . . encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.'" *Pueschel v. United States*, 369 F.3d 345, 354 (4th

12

Cir. 2004) (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)). Federal Courts "must apply state *res judicata* law to determine the preclusive effects of a state court judgment." *Greengael, LC v. Board of Supervisors of Culpeper County, Va.*, 313 Fed. Appx 577, 579 (4th Cir. 2008) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)). Under Virginia law, a final judgment in a prior case bars subsequent litigation not only of "every question which was decided, but also [of] every other matter which the parties *might have litigated and had determined*, within the issues as they were made or tendered by the pleadings." *Lofton Ridge, LLC v. Norfolk Southern Ry. Co.*, 268 Va. 377, 381 (2004) (emphasis added).

Here, Plaintiff has already sued the City in Virginia Court. ECF 12-1. That suit arose from her initial protest of her property assessment and proceedings before the Falls Church BOE. It alleged, *inter alia*, that the BOE Act is unconstitutional, that the Falls Church BOE's rules of procedure are unconstitutional, and that the City had violated her due process rights. *Id.* After a hearing, the Arlington County Circuit Court granted the City's demurrer, and denied her leave to amend. *Arakelian v. City of Falls Church*, No. 24-313, Pet. App. 15a-16a (U.S. Sept. 13, 2024). Because the granting of a demurrer in Virginia Court is a final judgment on the merits, *Greengael, LC v. Board of Supervisors of Culpepper County, Va.*, 313 Fed. App'x 577, 580 (4th Cir. 2008), and the parties to the case are the same, all that matters is whether the parties and issues are the same. Arakelian does not seriously contest that the issues in the two suits are by-and-large the same, and that the issues in her Complaint nearly all were or could have been litigated in her the first case. Rather, Arakelian notes that this case challenges as unconstitutional the 2023 BOE Rules of Procedure, while her prior cause challenges the 2022 BOE Rules of Procedure, and there was a small but material change to the 2023 rules. Opp. at 3-5 (citing Compl. ¶ 74). There, she focuses

13

on a new evidentiary rule she claims places unfair limitations on the evidence homeowners can rely on in their BOE hearings, while allowing for "surprise evidence" from the City. *Id.*

This argument works, but only narrowly. The new evidentiary rule established in 2023 is indeed not one which she "might have litigated and had determined" in her earlier case, because it was not in place at the time. *Lofton Ridge*, 268 Va. at 381. Aside from that, however, the Court fails to see how the subject matter of this and her prior litigation differ meaningfully at all. Both lob a bevy of collateral challenges to Virginia's laws and the Falls Church BOE's rules.[2] Each other claim could have been raised as part of her prior suit, and *res judicata* protects the City from having to litigate those issues once again. For that reason, Counts II, III, IV, and VII must be dismissed. Count I which claims the 2023 Rules are unconstitutional, passes the bar of *res judicata* but only insofar as it relies on the new evidentiary rule.[3]

### 2. Failure to State a Claim

Arakelian's remaining claim is that the 2023 Rules newly require a homeowner to present her "case based **only** on previously submitted materials to the BOE, whereas the City of Falls Church has **no** such similar restriction," thus allowing for the presentation of "surprise evidence against homeowners in a legal proceeding." Compl. ¶ 74 (emphasis in original). The City argues that the Complaint "mischaracterizes the Board's rules and also fails to explain how these rules actually violate her constitutional and due process rights." City MTD at 8. The City is correct, as attachment C to Arakelian's Complaint, the 2023 Rules themselves, contradicts her claim. Section 5.1 of the Rules, which applies to all parties before the BOE, notes that "no additional information [not previously submitted] may be presented to the board at the time of hearing without approval

---

[2] Moreover, Arakelian could not have been subjected to any new denials of due process because she voluntarily withdrew her 2023 appeal rather than avail herself of the BOE's processes. Compl. ¶ 44; *see Ashley v. NLRB*, 255 Fed. App'x 707, 710 (4th Cir. 2007).
[3] Counts V and VII are directed only at the Judge Defendants, and do not apply to the City. *See* City MTD at 12.

of the majority of the board upon a showing of extraordinary circumstances." ECF 1-3 at 2. This unqualified rule means that *no party*, homeowner or City, may ordinarily introduce "surprise evidence" at a BOE hearing.

Where, as here, an exhibit "conflict[s] [with] the bare allegations of the complaint . . . , the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1992). Arakelian, in her opposition, does not pretend that the rules, as written, could support a due process claim, but simply ignores section 5.1 to argue that "[t]here is **no language** in the 2023 BOE Rules of Procedure for respondent city to restrict its presentation of the case." Opp. at 23. Because this argument is belied by the rules themselves, Count I (insofar as *res judicata* does not apply) must be dismissed.

    **C.**    **Motion to Amend**

While Defendants' motions to dismiss were pending, Plaintiff filed a motion for leave to file an amended complaint, along with a proposed amended complaint. ECF 19; ECF 19-1. She argues that allowing her to file the amended complaint is appropriate because she "has deleted her 42 U.S.C. § 1985 claim," "added more factual details," "fixed inadvertent errors," "reorganized key sections for greater clarity," and "added clarifying language." ECF 20 at 3.

Under Fed. R. Civ. P. 15(a)(2), a district court should freely give leave to amend when justice requires. "[L]eave should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Franks v. Ross*, 313 F.3d 184, 193 (4th Cir. 2002). A proposed amendment is futile if it is clearly insufficient or frivolous such that it could not survive a motion to dismiss. *Macon v. DuPont*, 2011 WL 1838785, at *2 (E.D. Va. May 13, 2011) (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)).

Arakelian's proposed amendment would be futile. Starting with the Judge Defendants, nothing in her proposed amendments would change the Court's conclusions regarding the Judge Defendants' sovereign immunity, much less their lack of any ties to Arakelian's due process complaints.

As for the City, res judicata would still bar the vast majority of Arakelian's complaint. Arakelian's only new factual allegations that do not implicate res judicata involve the City's alleged September 2024 failure to file a police report after Arakelian received anonymous threats. *See* ECF 19-1 ¶ 64. Arakelian claims that this refusal to file a report was in retaliation for her filing a petition for a writ of certiorari with the Supreme Court, and that this violated her 14th amendment due process rights. *Id.* ¶ 128. These allegations are insufficient to state a claim. A party alleging a due process violation must identify "both the deprivation of his life, liberty or property interest by a state actor, and that the deprivation of this interest was 'arbitrary in the constitutional sense.'" *Callahan v. North Carolina Dept. of Public Safety*, 18 F.4th 142, 145 (4th Cir. 2021) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Arakelian's allegations regarding her attempt to file a police report cannot state a claim because she does not identify any interest in life, liberty, or property of which she was deprived. *See Walls v. Pastor*, 2012 WL 5392177, at *4 (W.D. Wash. Oct. 12, 2012) (alleged failure to file police report did not invoke protected interest). Moreover, she has not pled facts sufficient to plausibly allege that any police conduct towards her was the result of her filing a petition before the Supreme Court, such as how a Falls Church police officer would have been aware of her filing. *See* ECF 19-1.

Arakelian is now on her third attempt to litigate the same dispute. The third time is not the charm, and a fourth attempt would be similarly futile. Because Arakelian's proposed amended complaint adds little that is new, and what is new "does not properly state a claim," she has not

16

demonstrated that granting her leave to amend would be in the interest of justice. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

**D.   Sanctions**

Lastly, Arakelian has moved for Rule 11 sanctions against the City. ECF 23. Most of the motion is premised on the notion that the City has asked for Rule 11 sanctions against her, and in so doing "violated the procedural and substantive requirements of Rule 11." *Id.* at 3-8. That premise is entirely off base. In its motion to dismiss, the City requested the issuance of a prefiling injunction and an award of attorney's fees because of "Plaintiff's repeated frivolous claims." City MTD at 14-15. These requests, which the Court will not now grant, do not mention Rule 11 and will not be construed as a motion for Rule 11 sanctions. *See* Fed. R. Civ. P. 11(c)(2) (requiring such a motion to be filed separately from any other motion).[4] It therefore cannot have violated Rule 11's requirements. Arakelian's motion for sanctions will therefore be denied.

**IV.   CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that the Judge Defendants' Motion to Dismiss (ECF 7) is **GRANTED**; and it is further

**ORDERED** that the City's Motion to Dismiss (ECF 10) is **GRANTED** except insofar as it requests the issuance of a prefiling injunction and an award of attorney's fees; and it is further

---

[4] The Court will not grant the City's request for a pre-filing injunction at this time. City MTD at 5-6. "Such a drastic remedy must be used sparingly." *Cromer v. Kraft Foods N.A., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004). Plaintiff's record of litigation before this Court does not yet meet the high standard for imposition of such an injunction. *See id.* at 818 ("In determining whether a prefiling injunction is substantively warranted, a court must weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.").

Meanwhile, the City's brief request for attorney's fees fails to identify any provision under which fees may be awarded to it, and is also denied.

**ORDERED** that Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that Plaintiff's Motion for Leave to Amend (ECF 19) is **DENIED**; and it is further

**ORDERED** that Plaintiff's Motion for Rule 11 Sanctions (ECF 22) is **DENIED**.

The Clerk is directed to close this civil action and mail a copy of this Opinion and Order to Plaintiff, *pro se*.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within thirty (30) days of the date of entry of this Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the United States Court of Appeals for the Fourth Circuit. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

**SO ORDERED.**

/s/
Michael S. Nachmanoff
United States District Judge

June 24, 2025
Alexandria, Virginia

18